### CLEMENT, State Excise Com'r, v. SMITH.

(Supreme Court, Trial Term, Westchester County.    November 14, 1908.)

1. INTOXICATING LIQUORS (§ 150*)—ACTIONS FOR PENALTIES—DEFENSES.

Under the liquor tax law (Laws 1896, pp. 59, 61, c. 112), requiring, as conditions precedent to the right to sell intoxicating liquor, that the tax be paid, and (section 17) that an application be filed with the county treasurer, and (section 18) that a bond be filed, and (section 21, as amended by Laws 1901, p. 1538, c. 640) that a liquor tax certificate be posted, and (section 31, as amended by Laws 1903, p. 1129, c. 486) making it unlawful to sell liquor if the tax has not been paid and the liquor tax certificate posted, it is no defense to an action for penalties for selling liquor without liquor tax certificate that defendant applied to the county treasurer for a liquor tax certificate and tendered payment, but was unable to procure it because the county treasurer would not issue the same until he received certain blanks from the state excise department.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 150.*]

2. INTOXICATING LIQUORS (§ 150*)—ACTIONS FOR PENALTIES—DEFENSES.

A letter, written by the county treasurer to an applicant for a liquor tax certificate, that the treasurer had instructions from the state department of excise not to accept any bonds or issue any certificates until a supply of a new form of bonds were issued, and that, pending the issuance of such new bonds, applicant would be protected, and another letter, that he had instructions from the excise department to issue no liquor tax certificates on the old form of bonds, and a receipt acknowledging applicant's application and bond and payment of the liquor tax, afforded no protection to applicant for sales of liquor without having first obtained and posted a liquor tax certificate, as required by the liquor tax law.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 150.*]

Action by Maynard N. Clement, as state commissioner of excise, against Bartholomew J. Smith. Verdict directed for plaintiff.

William G. Van Loon and Frederick G. Whitney, for State Department of Excise.

John J. Torpey (Benjamin Fagen, of counsel), for defendant.

TOMPKINS, J. This action was brought to recover five penalties, of $50 each, for five separate alleged violations of the liquor tax law (Laws 1896, p. 45, c. 112 as amended by Laws 1901, p. 1532, c. 640) by the defendant in selling liquor to be drunk upon his premises without having obtained and posted a liquor tax certificate. The dates of the alleged sales are June 10, June 12, and June 13, July 2, and a second alleged offense on July 2, 1908. The sales of liquor by the de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fendant on the dates mentioned were established upon the trial, and it was admitted by the defendant that during the month of June, 1908, he had no liquor tax certificate posted, as required by law, and had received none from the county treasurer. It did appear, however, that prior to the 2d day of July, 1908, he had paid the county treasurer the license fee, and on that day received from said county treasurer a liquor tax certificate in proper form, which on that day he properly posted in his place of business in the village of Peekskill; and I find that there was no violation of the law by the defendant on the 2d day of July, 1908. The other dates, viz., June 10, June 12, and June 13, 1908, are the dates with which we are now concerned.

The sales of liquor by the defendant on those dates were amply established by the plaintiff's evidence. In fact, they were not denied by the defendant; but the claim made by the defense is that prior to the 10th day of June, 1908, he made application in due form to the county treasurer of Westchester county for the necessary liquor tax certificate and tendered the money therefor, but was unable to procure such certificate, for the reason that the county treasurer would not issue the same until he received certain blanks and forms from the state excise department. The facts are that in 1908 the Legislature amended the excise law (Laws 1908, p. 412, c. 406), so as to provide that thereafter the license year should commence on the 1st day of October in each year, instead of the 1st day of May, thereby making it necessary for those who held liquor tax certificates expiring on the 30th day of April, 1908, to take out a new license from the 1st day of May, 1908, to the 30th day of September of the same year. The defendant had a proper liquor tax certificate expiring April 30, 1908, under which he carried on business in the same place in which the violations of the law alleged in the complaint are said to have taken place.

The defendant's claim is that about the 1st of May, 1908, one Thomas J. Torpey, who was acting as the defendant's agent, went to the county treasurer's office and there saw a Mr. Carpenter, who had charge of all liquor tax matters in the county treasurer's office, in reference to obtaining a liquor tax certificate for the defendant and other persons for whom he was acting, and that the county treasurer's representative told him that he should bring all of the applications, including the defendant's, to the county treasurer's office on a subsequent day. No money was tendered on that day, nor was any demand made for a liquor tax certificate. About the 15th or 16th of May Mr. Torpey presented the defendant's application and bond, along with others, to the county treasurer's representative in charge of excise matters, who said:

"I cannot take these applications. You remember they reconvened an extra session of the Legislature, and they had some special excise law, and you have got to get a new bond. I cannot take these bonds."

At that time Mr. Torpey presented the defendant's application and bond, and had the license fee with him, although it does not appear that he tendered any money to the county treasurer. The date of this occurrence is not definitely fixed by Torpey. It was somewhere be-

tween the 15th of May and the 1st of June. On the 22d day of May the county treasurer's representative wrote a letter to Mr. Torpey in which he said:

"We have had instructions from the department of excise at Albany that we cannot accept any bonds or issue any liquor tax certificates until a supply of a new form of bonds are issued. Pending the issuance of new bonds, your customers will be protected."

On the 28th day of May, 1908, the county treasurer's representative wrote another letter to Mr. Torpey in which he said:

"In answer to your telephone to-day, as to the bonds for liquor tax certificates, would say that we have had instructions from the excise department at Albany, N. Y., to issue no liquor tax certificates on the old forms of bonds, and that a new supply will be forwarded as soon as received. In communication with the bonding company, we have been informed that a supply will be forwarded to us as soon as received."

On June 13, 1908, the county treasurer delivered to said Torpey the following receipt:

"White Plains, N. Y., June 13th, 1908.

"Received from B. J. Smith, of No. 1 South Division street, Peekskill, N. Y., application and bond, and two hundred eighteen and $72/100$ dollars.

"Joseph B. See, Co. Treas."

It is admitted that the regular liquor tax certificate was not delivered to the defendant until the 2d of July, 1908. It does not appear when the county treasurer received the new supply of blank bonds, nor does it appear why a liquor tax certificate was not delivered to the defendant, or to his agent, Mr. Torpey, prior to July 2, 1908, except that down to May 28th the county treasurer had not received the new supply of blanks. It also appears that on the 22d day of May, 1908, the state commissioner of excise wrote a letter to the county treasurer of Westchester county, in which he said:

"By reason of the provisions of chapter 350, p. 1022, of the Laws of 1908, which became a law on the 19th inst., the liquor tax bond which has been used heretofore is no longer in proper form. A new form of bond is being prepared by the department, and a supply will be sent you as soon as possible. In the meantime you will accept no more of the bonds formerly used, nor issue or transfer any liquor tax certificates. Kindly return to the department at once all unused bonds which you have in your possession."

The evidence fails to show when the new blank bonds were received by the county treasurer, so that it is impossible to say from the evidence that on the 10th, 12th, and 13th days of June, 1908, when the violations are alleged to have taken place, the defendant could not have had posted in his place of business a regular liquor tax certificate. No formal application was made for a license by or on behalf of the defendant until subsequent to the 15th day of May, 1908, and no money was paid for such license until the 13th day of June, 1908. No excuse is offered by the defendant for his failure to take out and pay for his liquor tax certificate prior to the 15th of May, 1908. The new bond did not go into effect until May 19th. It was not sufficient that his agent, Mr. Torpey, should go to the county treasurer's office to arrange for the making of the applications at a subsequent date. It was the duty of the defendant to make his application in

proper form, accompanied by the required bond and the amount of the tax, prior to the 1st day of May, and if for any reason he failed to obtain a proper certificate prior to that date it was his duty under the law to refrain from trafficing in liquors until he received and posted a certificate as required by the statute; and if the county treasurer for any reason refused or neglected to receive his application and money and issue a proper certificate the defendant's remedy was by an application to the court for a writ of certiorari, but in no event did he have a right to sell liquor until he had obtained and posted a proper liquor tax certificate.

The county treasurer had no authority to authorize the defendant to continue business after the 1st of May, except by issuing a regular liquor tax certificate, in the form and manner provided by the liquor tax law, and the letters written by him on May 22 and May 28, and the receipt given on June 13, 1908, afforded no protection to the defendant. The liquor tax law explicitly details the steps necessary to be taken by any person who seeks to traffic in liquor, all of which must be taken before the business becomes legal. In the first place, he must pay the tax; second, he must file with the county treasurer the formal application, under section 17 of the liquor tax law (Laws 1896, pp. 59, 61, 65, c. 112); third, he must file and have approved the bond required by section 18 of the liquor tax law; and then it is provided in section 21, as amended by Laws 1901, p. 1538, c. 640, that:

"Before commencing or doing any business for the time for which the excise tax is paid, and the certificate is given, the said liquor tax certificate shall be inclosed in a suitable wood or metal frame, having a clear glass face, and a substantial wood or metal back, so that the whole of said certificate may be seen therein, and shall be posted up, and at all times displayed in a conspicuous place in the room or bar, where the traffic in liquors, for which the tax was paid, is carried on, so that all persons visiting such place may readily see the same."

It is admitted in this case that at no time during the month of June was there a liquor tax certificate, in the form prescribed by section 20 of the liquor tax law, posted in the defendant's barroom, nor was there such a certificate in his possession. Section 31 of the law provides:

"It shall not be lawful for any person who has not paid a tax, as provided in section 11 of this act, and obtained and posted a liquor tax certificate, as provided in this act, to sell, offer or expose for sale, or give away, liquors in any quantity less than five wine gallons at a time." Laws 1896, p. 73, c. 112, as amended by Laws 1903, p. 1129, c. 486.

In the matter of Lyman v. Fegen, 26 Misc. Rep. 300, 56 N. Y. Supp. 1020, the court, in considering the provisions of section 31, above quoted, said:

"It will be seen that the word 'and,' and not the word 'or,' is used to connect the different parts of these sentences, and therefore the payment of the tax alone is not sufficient to protect the vendor. He must do it, and also comply with the provision of the law with respect to posting the certificate where it can at all times be readily seen; else the sale of liquor is illegal under section 31."

The defendant's evidence fails to show that prior to the 13th of June, 1908, he had paid the tax, or filed a properly verified applica-

tion, or filed and had approved the bond required by section 18; and while it does appear that on the 13th of June, he filed with the county treasurer an application and bond, and paid the tax, yet it is conceded by the defendant that he did not on that day, nor for two weeks thereafter, have the liquor tax certificate posted, or even in his possession. The refusal or failure of the county treasurer to receive from the defendant the liquor tax, or to issue to him a proper certificate, did not justify the defendant in trafficing in liquors after the 1st of May, 1908, and is no defense to this action, which is brought to recover penalties for sales made between that date and July 2, 1908, when the defendant actually received and posted the liquor tax certificate.

Under the old excise law it was held that commissioners of excise had no power to abrogate the statute, and that their neglect of duty would not save a person from the penalty imposed for an unauthorized and unlawful sale. Mayor, etc., of N. Y. v. Mason, 4 E. D. Smith, 146. The same rule applies to the county treasurer under the present law. In the case of Lawrence v. Gracy, 11 Johns. 179, it was held that, on the trial of an action for a penalty for violation of the excise law, evidence that the defendant had received a parol license was inadmissible. In the case of Cronin v. Stoddard, 97 N. Y. 271, it was held that, to avoid the penalty imposed by the excise law (chapter 628, p. 405, Laws 1857), the party desiring to sell liquor must see to it that he obtains a license from those clearly authorized to grant it. In this case the defendant, sued for a penalty, defended upon the ground that he had received a license from the commissioners of excise. It appears, however, that those who had signed the license were not commissioners. The court (Danforth, J.) said:

"One who desires to enjoy the privileges offered by the act under which the proceedings in question were had must see to it that they are granted by one duly authorized, or submit to the penalty prescribed."

In many other states, as well as our own, it has been held that showing qualifications and fitness to engage in the liquor business, willingness to comply with all the terms and conditions of the license law, a tender of the license fee, and the arbitrary and wrongful refusal by the municipal officers to issue a license, will not excuse the necessity of such license, or justify a sale made without it. Montpelier v. Mills (Ind.). 85 N. E. 6; Meroney v. State, 49 Tex. Cr. R. 337, 92 S. W. 845; Mayor, etc., of N. Y. v. Mason, 4 E. D. Smith, 146; Kadgihan v. Bloomington, 58 Ill. 229; Village of Franklin v. Stringan, 56 Ill. App. 94; Rosenham v. Commonwealth (Ky.) 2 S. W. 230; State v. Huntly, 29 Mo. App. 278; Roberts v. State, 26 Fla. 360–363, 7 South. 861; Commonwealth v. Blackington, 24 Pick. (Mass.) 352; State v. Bach, 36 Minn. 234, 30 N. W. 764; State v. Cron, 23 Minn. 140.

In the case at bar there is no excuse whatever given for the defendant's failure to obtain a liquor tax certificate prior to the 19th of May, 1908, which was the date when the new law, requiring a new form of bond, went into effect. Nor does it appear that the county treasurer was not in a position to issue a proper certificate between the date of his last letter to Mr. Torpey, which was May 28, 1908, and the 10th day of June, when the first violation occurred; but, in any event,

whether the fault was in the county treasurer's office, or with the new law, or with the defendant's agent, Torpey, he had no right to sell liquor after the 1st of May, 1908, without having first procured and posted the regular liquor tax certificate. In other words, to entitle him to sell liquor, it was necessary that all the conditions precedent, viz., the payment of the liquor tax, the filing of a proper written application duly verified, the filing and approval of a proper bond, and the posting of a liquor tax certificate, should have been complied with. If the fault was in the county treasurer's office, or even in the office of the state commissioner of excise, the defendant could have compelled the issuing to him of a liquor tax certificate by a writ of certiorari, if he was entitled thereto, by an application to the Supreme Court; but pending the determination of such an application he would have had no right to traffic in liquors.

A verdict is directed in favor of the plaintiff, on the first three causes of action, for $150 and costs.